UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
YITZCHOK KLEIN,

                Plaintiff,

        -against-

FINWISE BANK,

                Defendant.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-6854 (OEM) (PCG)

ORELIA E. MERCHANT, United States District Judge:

*Pro se* Plaintiff Yitzchok Klein ("Plaintiff") commenced this action against Defendant FinWise Bank ("Defendant") seeking declaratory relief, injunctive relief, and damages arising from a commercial mortgage loan. *See generally* Second Amended Complaint, Dkt. 27-2 ("Second Amended Complaint" or "SAC"). Before the Court is Defendant's motion to dismiss Plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state claims upon which relief can be granted. *See* Defendant's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint, Dkt. 30-8 ("Motion" or "Mot."); Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Dkt, 29 ("Opposition" or "Opp'n"); Defendant's Reply Memorandum of Law in Further Support of Motion to Dismiss Plaintiff's Complaint, Dkt. 30-10 ("Reply").

For the following reasons, Defendant's Motion is granted.

## BACKGROUND

On November 16, 2021, Plaintiff agreed to purchase 5314 18th Avenue, Brooklyn New York for $1.8 million and paid a $90,000 deposit. SAC ¶ 9. To secure financing for the remaining balance, Plaintiff sought a loan from Defendant. SAC, Exhibit C ¶ 4, Dkt. 27-3. On December 2, 2021, Plaintiff received a pre-approval commitment letter from Defendant indicating that he had

been pre-approved for financing. *See* SAC, Exhibit A, Dkt. 27-3 ("Commitment Letter"). The Commitment Letter indicated that Defendant's approval was contingent upon Defendant obtaining approval from the U.S. Small Business Administration ("SBA"), and it set forth Defendant's terms and conditions regarding the loan. *See id.* The Commitment Letter indicated that the applicable interest rate "shall be the rate as published in the Wall Street Journal as the 'Prime Rate', plus 2.25% adjusted calendar quarterly." Commitment Letter ¶ 5. The Commitment Letter also indicated that "[t]he Note, Guarantees, and other Loan Documents will include confession of judgment clauses." *Id.* ¶ 15. Plaintiff signed the Commitment Letter on December 2, 2021, thereby reflecting that he "[a]cknowledged and [a]ccepted" the terms and conditions set forth by Defendant. *See id.* at 4.

On February 23, 2022, Defendant and Plaintiff's counsel for the transaction communicated via email regarding the confession of judgment provisions. *See* SAC, Exhibit B, Dkt. 27-3; Declaration of Susan L. McWalters in Support of Defendant's Motion to Dismiss the Plaintiff's Complaint, Exhibit 6, Dkt. 30-7 ("Feb. 23, 2022, Email Chain").[1] Plaintiff's counsel negotiated to have the confession of judgment provisions effective only upon a payment default. Feb. 23, 2022, Email Chain.

On February 25, 2022, Defendant gave an SBA mortgage loan to non-party entities controlled by Plaintiff. *See* Declaration of Susan L. McWalters in Support of Defendant's Motion to Dismiss the Plaintiff's Complaint, Exhibit 3, Dkt. 30-4 ("Note"). The loan was evidenced by a Note in the principal sum of $1,530,000 and was executed by Plaintiff on behalf of the non-party

---

[1] When ruling on a motion to dismiss pursuant to Rule 12(b)(6), a Court "may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in [a] plaintiff['s] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit.'" *Lorber v. Winston*, 962 F. Supp. 2d 419, 438 (E.D.N.Y. 2013) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). Plaintiff attached an incomplete record of the February 23, 2022, email chain as Exhibit B of the Second Amended Complaint. As Plaintiff possesses and relies on these communications in asserting his claims, the Court considers the complete record of the communications provided by Defendant. *See id.*

entities on February 25, 2025. *See id.* The Note indicated that the interest rate was the "Wall Street Journal Prime + 2.00%," adjusted every calendar quarter. *Id.* at 1. The Note was guaranteed by Plaintiff pursuant to an "Unconditional Guarantee" agreement executed by Plaintiff that same day. *See* Declaration of Susan L. McWalters in Support of Defendant's Motion to Dismiss the Plaintiff's Complaint, Exhibit 4, Dkt. 30-5 ("Guaranty"). Plaintiff additionally executed a personal confession of judgment in connection with the loan. *See* Declaration of Susan L. McWalters in Support of Defendant's Motion to Dismiss the Plaintiff's Complaint, Exhibit 5, Dkt. 30-6 ("Confession of Judgment") (Note, Guaranty, and Confession of Judgment collectively, "Loan Documents").[2]

## LEGAL STANDARD

Defendant seeks to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the alleged facts allow a court to reasonably infer "that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The principle that a court must accept the allegations in a complaint as true does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citing *Twombly*, 550 U.S. at 555).

In reviewing a *pro se* complaint, the Court is mindful that a plaintiff's pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*,

---

[2] The Commitment Letter was attached to the Second Amended Complaint as Exhibit A, and the Loan Documents are documents in Plaintiff's possession that he references in his Second Amended Complaint and relies on in asserting his claims. *See generally* SAC. Accordingly, the Court may properly consider the Loan Documents in connection with this Rule 12(b)(6) Motion. *See Lorber*, 962 F. Supp. 2d at 438.

551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (stating that "[e]ven after *Twombly*," the Court "remain[s] obligated to construe a *pro se* complaint liberally" (citations omitted)).

## DISCUSSION[3]

Plaintiff asserts seven causes of action based on Defendant's alleged last-minute notification that a personal Confession of Judgment was required to close on the loan, failure to explain that the Note's interest rate was based on the Wall Street Journal Prime Rate rather than the Federal Prime Rate, and failure to advise Plaintiff that the real property taxes would increase due to the expiration of a claimed real property tax abatement covering the mortgaged premises. *See* SAC ¶¶ 11-20. The Court addresses each cause of action in turn.

### A. First Cause of Action - Unconscionability

First, Plaintiff alleges that the terms of the Loan Documents are procedurally and substantively unconscionable. *Id.* ¶¶ 21-31. Plaintiff requests that the Court refuse to enforce the unconscionable provisions and/or reform the Loan Documents to eliminate unconscionability. *Id.* ¶ 32.

Unconscionability is a flexible concept "that is intended to be sensitive to realities and nuances of the bargaining process." *State v. Avco Fin. Serv. of N.Y. Inc.*, 406 N.E.2d 1075, 1078 (N.Y. 1980). "Under New York law, '[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made—

---

[3] The Commitment Letter contains a choice of law provision stating that "all loan documents will be interpreted and the rights and liabilities of the parties shall be determined in accordance with the laws of the State of Utah." Commitment Letter ¶ 15. However, the Second Amended Complaint and the parties' Motion papers only reference New York law. *See generally* SAC; Mot.; Opp'n; Reply. As such, the Court finds that New York law controls through implied consent and conducts its analysis pursuant to New York law. *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'" (quoting *Tehran-Berkeley Civ. & Env't Eng'rs v. Tippetts-Abbett-McCarthy-Stratton,* 888 F.2d 239, 242 (2d Cir. 1989))).

4

i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Ortiz v. Dep't Educ. of NYC*, 11-CV-6027 (SLT) (SMG), 2015 WL 5518176, at *16 (E.D.N.Y. Sep. 16, 2015) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988)); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999).

Procedural unconscionability requires "an examination of the contract formation process and the alleged lack of meaningful choice." *Gillman*, 534 N.E.2d at 828. Procedural unconscionability

> considers whether there has been a lack of meaningful choice to accept a challenged provision by evaluating a number of factors, including "(1) the size and commercial setting of the transaction; (2) whether there was a lack of meaningful choice by the party claiming unconscionability; (3) the experience and education of the party claiming unconscionability; and (4) whether there was disparity in bargaining power."

*Haft v. Haier US Appliance Sols., Inc.*, 578 F. Supp. 3d 436, 452 (S.D.N.Y. 2022) (quoting *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003)). "The inquiry into substantive unconscionability involves an analysis 'of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged.'" *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 202 (E.D.N.Y. 2010) (quoting *Gillman*, 534 N.E.2d at 829); *see also Ng v. HSBC Mortg. Corp.*, 07-CV-5434 (RRM) (VVP), 2010 WL 889256, at *19 (E.D.N.Y. Mar. 10, 2010) (noting that a transaction is "unreasonably favorable" when it becomes oppressive or unfairly surprising); *Am. Fam. Life Assurance Co. of N.Y. v. Baker*, 778 F. App'x. 24, 27 (2d. Cir. 2019) ("Courts assessing the substantive unconscionability of an agreement consider 'whether one or more key terms are unreasonably favorable to one party.'" (quoting *Sablosky v. Edward S. Gordon Co., Inc.*, 535 N.E.2d 643, 647 (N.Y. 1989))). "Procedural and substantive unconscionability have been

5

described as operating on a 'sliding scale,' meaning that 'the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa.'" *Shema*, 832 F. Supp. 2d at 201 (quoting *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (2d Dep't 1983)).

With respect to procedural unconscionability, Plaintiff alleges that Defendant "introduced critical terms at the eleventh hour, including a personal [Confession of Judgment] that was first presented at or immediately before the February 25, 2022 closing." SAC ¶ 23. Plaintiff further alleges that "[t]he timing, lack of advance disclosure of a personal [Confession of Judgment], and refusal to adjourn created surprise and severe time pressure, leaving no meaningful opportunity to review or negotiate the term." *Id.* ¶ 28. However, Plaintiff's allegations regarding a lack of meaningful choice are not plausible. The terms of the December 2, 2021, Commitment Letter, which Plaintiff acknowledged and accepted, informed Plaintiff that the forthcoming Loan Documents, including the Guaranty, would contain confession of judgment clauses. Commitment Letter ¶ 15. Moreover, Plaintiff admits in the Second Amended Complaint that he was represented by counsel and that counsel received the full Confession of Judgment language two days prior to closing. SAC ¶ 12. As reflected by the email chain between Defendant and Plaintiff's counsel on February 23, 2022, the parties negotiated to limit the Confession of Judgment to be effective only upon a payment default. *See* Feb. 23, 2022, Email Chain. Plaintiff cannot plausibly allege that he lacked a meaningful choice as to the Confession of Judgment under these circumstances. *Tarpon Bay Partners LLC v. Zerez Holdings Corp*, 79 F.4th 206, 226 (2d Cir. 2023) (finding that plaintiff's "failure to consult with readily available counsel . . . preclude[ed] a finding of procedural unconscionability"); *see also Gupta v. Headstrong, Inc.*, 17-CV-5286 (RA), 2019 WL 4256396,

6

at *4 (E.D.N.Y. Sep. 9, 2019) (finding that the plaintiff did not lack a meaningful choice in negotiating a settlement agreement when represented by counsel).

Furthermore, while Plaintiff does allege that Defendant "conditioned funding on execution of the personal [Confession of Judgment] and declined to adjourn," SAC ¶ 26, those allegations do not show a lack of meaningful choice. Plaintiff does not claim that he requested to adjourn the closing, nor has Plaintiff pleaded any high pressure or deceptive tactics, a lack of education or experience, or a disparity in bargaining power. *See Haft*, 578 F. Supp. 3d at 452. Rather, Plaintiff describes closing pressure on *his* end, not by Defendant. SAC ¶ 27 ("Plaintiff had already committed a $90,000 deposit and incurred appraisal/closing costs; declining to sign risked losing those sunk costs and the property."). Accordingly, Plaintiff has not plausibly alleged procedural unconscionability.

With respect to substantive unconscionability, Plaintiff alleges that the Confession of Judgment and related enforcement provisions are unduly one-sided. *Id.* ¶ 29. He also alleges that the interest rate mechanics were described "without clearly identifying the index used in practice or illustrating the payment impact, allocating disproportionate risk and cost to Plaintiff as guarantor." *Id.* ¶ 30. As for Plaintiff's allegations about the Confession of Judgment, the Court has already discussed how Plaintiff was represented by counsel in negotiating its terms. *See Gupta*, 2019 WL 4256396, at *4. Plaintiff also does not assert that he was forced to close on the loan. Plaintiff cannot plausibly allege that the terms were oppressive or unfairly surprising under these circumstances. *See Ng*, 2010 WL 889256, at *19. Plaintiff's allegations regarding the interest rate mechanics also cannot pass the plausibility test, as the Commitment Letter signed by Plaintiff two months prior to closing clearly defined the interest rate as "the rate as published in the Wall Street Journal as the 'Prime Rate, plus an additional 2.25% adjusted calendar quarterly." Commitment

Letter ¶ 5.  The Note also clearly defined the interest rate as the Wall Street Journal Prime but gave Plaintiff a more favorable 2 percent quarterly adjustment.  *See* Note at 1.

Moreover, as a broader point, the unconscionability doctrine is meant to "provid[e] protection to vulnerable, unsophisticated parties" by "plug[ging] the gaps left open by applicable statutory provisions when they do not afford consumers adequate protections."  *Ng*, 2010 WL 889256, at *20.  Here, Plaintiff is a guarantor on a commercial loan and was represented by counsel during the transaction.  He is not vulnerable, unsophisticated, or a consumer, and he is therefore not an individual the unconscionability doctrine is meant to protect.  *See id.*

Accordingly, Plaintiff has failed to plausibly allege unconscionability and that claim is dismissed.

### B.  Second Cause of Action - Violation of NY Uniform Commercial Code Section 1-304

Next, Plaintiff alleges that Defendant violated Section 1-304 of the New York Uniform Commercial Code ("Section 1-304") by breaching its obligation to act in good faith during negotiation, performance, and enforcement of the loan agreement.  SAC ¶¶ 33-43.

Section 1-304 imposes an obligation of good faith in the performance and enforcement of contracts.  N.Y. U.C.C. LAW § 1-304.  Good faith is defined as "honesty in fact in the transaction or conduct concerned."  N.Y. U.C.C. LAW § 1-201(b)(20).  The commentary to Section 1-304 clarifies that the good faith requirement "means that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract or makes unavailable, under the particular circumstances, a remedial right or power.  N.Y. U.C.C. LAW § 1-304 cmt. 1.  "Accordingly, the good faith requirement is not 'an independent cause of action for failure to perform or enforce in good faith' that governs a party's every move pre- and post-contract, but rather applies only to the specific obligations that a party took upon themselves in the

contract." *Abbott Lab'ys v. Adelphia Supply USA*, 15-CV-5826 (CBA) (LB), 2017 WL 6014322, at \*3 (E.D.N.Y. Aug. 14, 2017) (quoting N.Y. U.C.C. LAW § 1-304 cmt. 1); *see also Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) (finding that under New York law, the obligation of good faith "applies to enforcement and performance of contracts").

Here, Plaintiff does not allege that Defendant had any responsibilities under the Loan Documents that it breached. While Plaintiff alleges that Defendant breached an obligation of good faith during the negotiation phase prior to closing by failing to disclose the Confession of Judgment and interest rate provisions, these allegations are not related to any claimed obligations under the Loan Documents. *See* SAC ¶¶ 37-39. Further, Plaintiff's allegations regarding a lack of good faith in performance and enforcement also do not relate to a specific obligation that Defendant undertook in the Loan Documents, as the allegations merely boil down to the assertion that Defendant disregarded standards of fair dealing. *See id.* ¶¶ 40-43.

Accordingly, Plaintiff has failed to plausibly allege a violation of Section 1-304 and that claim is dismissed.

### C. Third Cause of Action - Violation of NY General Business Law Section 349

Plaintiff alleges Defendant violated NY General Business Law Section 349 (Section 349) by engaging in deceptive acts and practices.

Section 349 prohibits "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 349(a). To state a claim under Section 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521(2d Cir. 2000).

"To qualify as 'consumer-oriented conduct,' a defendant's acts or practices 'need not be repetitive or recurring,' but 'must have a broad impact on consumers at large; private disputes unique to the parties . . . would not fall within the ambit of the statute.'" *Karakus v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 318, 338-39 (E.D.N.Y. 2013) (quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995)); *see also Kapsis*, 923 F. Supp. 2d at 449 (describing consumer-oriented conduct as "conduct that potentially affects similarly situated consumers" (quoting *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996))). To satisfy the consumer-oriented conduct requirement in the context of a real estate transaction, "courts have generally required that a plaintiff allege that the defendant affirmatively and publicly sought transactions with consumers." *Hayrioglu v. Granite Cap. Funding, LLC*, 794 F. Supp. 2d 405, 410 (E.D.N.Y. 2011); *see also Sheehy v. New Century Mortg. Corp.*, 690 F. Supp. 2d 51, 74-75 (E.D.N.Y. 2010) (collecting cases); *Polonetsky v. Better Homes Depot, Inc.*, 760 N.E.2d 1274, 1277 (N.Y. 2001) (finding "a 'package' of services in which the sale of real estate was 'inextricably intertwined' with services" covered by relevant consumer protection law).

Here, Plaintiff has not alleged facts showing that Defendant's conduct was consumer-oriented. Plaintiff alleges that "Defendant's actions were consumer-oriented because they involved practices that *could* affect a broad range of borrowers seeking commercial loans, not just Plaintiff." SAC ¶ 51 (emphasis added). This unsupported allegation that Defendant's actions *could* affect a broad range of consumers does not pass muster. *See Hayrioglu*, 974 F. Supp. 2d at 410. The allegations relate solely to Plaintiff's interest rate, a negotiated Confession of Judgment, and Plaintiff's property taxes, thereby reflecting that the dispute is a private, commercial matter that does not have a broad impact on consumers at large and therefore does not fall within the ambit of the statute. *See Karakus*, 941 F. Supp. 2d at 338-39.

Even if Plaintiff were to plausibly allege consumer-oriented conduct, Plaintiff has not plausibly alleged that Defendant's actions were materially misleading.  Plaintiff alleges three instances of materially misleading conduct by Defendant.  First, Plaintiff alleges that Defendant misrepresented the interest rate by failing "to specify that the Wall Street Journal Prime Rate referenced was significantly higher than the Federal Reserve's Federal Funds Prime Rate."  SAC ¶ 52(a).  However, Plaintiff does not provide, nor is the Court aware of any authority that requires Defendant to explain the difference between the rates.  Plaintiff does not allege that Defendant misrepresented the applicable rate, and both the Commitment Letter and the Note clearly indicate that the Wall Street Journal Prime Rate applied.  *See* Commitment Letter ¶ 5; Note at 1.

Second, Plaintiff alleges that Defendant failed to disclose payment risks related to interest rate adjustments by not providing examples or payment projections.  SAC ¶ 52(b).  Again, Plaintiff does not provide, nor is the Court aware of any authority that required Defendant to provide projections of future interest rate fluctuations.  Plaintiff also does not allege that Defendant engaged in any materially misleading conduct as to the payment risks inherent to the agreement and its applicable interest rate.

Lastly, Plaintiff alleges that Defendant included a Confession of Judgment without adequately explaining its implications or providing Plaintiff with a reasonable opportunity to review or negotiate the term.  SAC ¶ 52(c).  As discussed above, the Commitment Letter signed by Plaintiff two months prior to closing indicated that a Confession of Judgment was required.  Commitment Letter ¶ 15.  Moreover, Plaintiff negotiated the Confession of Judgment term through counsel prior to closing.  *See* Feb. 23, 2022, Email Chain.  Accordingly, Plaintiff has failed to plausibly allege the materially misleading element of Section 349.

Plaintiff similarly fails to satisfy the injury and causation element of Section 349.  Plaintiff alleges that because of Defendant's deceptive acts and practices, he suffered financial harm from: unexpected and excessive monthly payments; increased property taxes due to the failure to disclose the expiration of a tax abatement; severe financial strain on his business operations; exposure to legal and financial risks; and intangible harm like reputational damage and stress.  SAC ¶ 54. Notwithstanding Plaintiff's failure to sufficiently plead materially misleading conduct, Plaintiff does not adequately explain how such conduct caused the alleged injuries, particularly regarding the alleged financial strain, risk exposure, and intangible harm.  To the extent Plaintiff's alleged injuries regarding increased interest rates and property taxes stem from his failure to understand the terms of the agreement, the allegations do not overcome "the principle that a reasonable consumer, at least in New York, is expected to read and be familiar with the terms of a document [he] signs." *Karakus*, 941 F. Supp. 2d at 340.

Accordingly, as Plaintiff fails to plausibly allege all three elements of a cause of action under Section 349, that claim is dismissed.

### D.  Fourth Cause of Action - Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff claims a violation of the implied covenant of good faith and fair dealing from Defendant's alleged last-minute disclosure of the Confession of Judgment and adjustable interest rate provisions; failure to disclose an expiring property tax abatement; inadequate explanation of the interest rate terms; aggressive collection tactics; and threatened enforcement of potentially illegal provisions.  SAC ¶ 61.

To establish a claim for breach of the duty of good faith and fair dealing "(1) [the] defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) [the] defendant must breach that duty; and (3) the breach of duty must proximately cause [the] plaintiff's

12

damages." *Schwartzco Enters. v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 364 (E.D.N.Y. 2014) (quoting *Champagne v. United States,* 15 F. Supp. 3d 210, 221 (N.D.N.Y. 2014)); *see also Aquino v. Alexander Cap. LP*, 23-1109 (L), 23-1164 (XAP), 2024 WL 2952497, at *4 (2d Cir. June 12, 2024) (noting that a cause of action for breach of the duty of good faith requires a showing of damages). "'[T]he covenant of good faith and fair dealing is implicit in every contract' under New York law . . . ." *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x. 13, 16 (2d Cir. 2014) (quoting *Consol. Edison, Inc. v. Ne. Utils.*, 426 F.3d 524, 529 (2d Cir. 2005)). To establish a breach of the duty, "a party's action must directly violate 'an obligation that may be presumed to have been intended by the parties.'" *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407-08 (2d Cir. 2006) (quoting *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990)). "New York law does not recognize a duty of good faith in the formation of a contract," and as such, "[a] good faith duty only exists in a party's performance or enforcement of a contract." *Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 653 (E.D.N.Y. 2012); *see also M/A COM Sec. Corp.*, 904 F.2d at 136.

Here, Defendant owes Plaintiff a duty to act in good faith and conduct fair dealing given the parties' contractual agreement. *See Fillmore*, 552 F. App'x at 16. With respect to the second element of breach, the majority of the allegations made by Plaintiff relate to negotiations prior to the execution of the Loan Documents, not obligations purportedly set forth in the Loan Documents. *See* SAC ¶ 61 (alleging last-minute disclosure of the Confession of Judgment and adjustable-rate provisions, failure to disclose the expiring property tax abatement, and inadequate explanation of interest rate terms). The duty of good faith and fair dealing does not attach to these pre-contract allegations. *Mendez*, 840 F. Supp. 2d at 653. To the extent Plaintiff references the Commitment Letter as part of the contract that Defendant breached, Defendant followed through on its

13

obligations thereunder by providing a loan with an interest rate based upon the Wall Street Journal Prime Rate and by requiring a Confession of Judgment from Plaintiff as the guarantor. *See* Commitment Letter ¶¶ 5, 15; Note at 1; Confession of Judgment. Moreover, the Commitment Letter and the Loan Documents did not require Defendant to explain the terms of the Loan Documents or provide a prediction on the affordability of the loan. *See generally* Commitment Letter; Loan Documents. Nor did the Commitment Letter or Loan Documents require Defendant to provide guidance on the property taxes imposed upon the mortgaged premises. *See generally* Commitment Letter; Loan Documents.

With respect to the alleged breach based on Defendant's collection tactics and threatened enforcement of the Confession of Judgment, those rights are afforded to Defendant under the terms of the Loan Documents. *See* Loan Documents. Furthermore, Plaintiff fails to specify how the Confession of Judgment is "potentially illegal" and how Defendant's conduct is anything more than enforcing its rights upon default. *See* SAC ¶ 61. Without more, these claims are conclusory assertions that do not rise to the level of plausibility necessary to survive a Section 12(b)(6) motion to dismiss. *See Twombly*, 550 U.S. at 557.

Accordingly, Plaintiff fails to plausibly allege a breach of the implied covenant of good faith and fair dealing and that claim is dismissed.

### E. Fifth Cause of Action - Breach of Fiduciary Duty

Plaintiff alleges that Defendant owed Plaintiff a fiduciary duty due to the nature of the loan transaction. SAC ¶ 69.

"To state a cause of action to recover damages for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Yukos Cap. S.A.R.L. v. Feldman*,

14

977 F.3d 216, 241 (2d Cir. 2020) (internal quotation omitted).  "New York courts have held that a fiduciary duty generally does not exist between mortgage brokers and borrowers." *Iannuzzi v. Am. Mortg. Network, Inc.*, 727 F. Supp. 2d 125, 138 (E.D.N.Y. 2010); *Mfrs. Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993) (finding that a debtor-creditor relationship does not create a fiduciary duty).

Here, with respect to the existence of fiduciary relationship, Plaintiff concedes that "lender-borrower relationship[s] [are] not typically fiduciary in nature" but nonetheless alleges that there was a special relationship between himself and Defendant due to: the federal regulations imposed upon SBA lenders like Defendant; Defendant's superior knowledge and expertise; the nature of the SBA loans; and Plaintiff's trust and confidence placed in Defendant.  SAC ¶¶ 68-69; *see also* Opp'n at 13.  These allegations, however, are conclusory, and Plaintiff cites no exception for the general rule that would otherwise apply in this case.  *See Iannuzzi*, 727 F. Supp. 2d at 138 (rejecting the argument that a borrower places trust and confidence in a lender as it "would effectively make virtually every lender a fiduciary of its borrower"); *Mfrs. Hanover Tr. Co.*, 7 F.3d at 318 (holding that there was no fiduciary relationship where the lender did not control "the assets or operations" of the borrower or "otherwise exercised powers beyond those of a typical lender-creditor"); *Romain v. Webster Bank N.A.*, 23-cv-5956 (NRM) (JMW), 2025 WL 50919, at *6 (E.D.N.Y. Jan. 8, 2025) (dismissing a *pro se* plaintiff's breach of fiduciary duty claim because "they cite no exception to general rule").  Plaintiff has therefore failed to allege the existence of a fiduciary relationship.

Plaintiff has likewise failed to adequately plead facts to satisfy the second element of a breach of fiduciary duty.  In alleging misconduct by Defendant, Plaintiff again points to Defendant's failure to disclose information about the property tax abatement, Defendant's

inadequate explanation of the interest rate terms, and Defendant's inclusion of the Confession of Judgment and threats to act upon it. *See* SAC ¶ 71. Even assuming these allegations to be true and viewing them in a light most favorable to Plaintiff, he nonetheless fails to plausibly allege misconduct by Defendant. As discussed above, the interest rate terms and confession of judgment provisions were set forth clearly in the Commitment Letter and Loan Documents, and the Loan Documents imposed no duty on Defendant to disclose the information about the property tax abatement. *See generally* Commitment Letter; Loan Documents. Further, Plaintiff provides no more than conclusory statements in alleging that Defendant's efforts to enforce its rights upon default amount to misconduct. *See* SAC ¶ 71(e).

Accordingly, Plaintiff fails to plausibly allege a breach of fiduciary duty and that claim is dismissed.

### F. Sixth Cause of Acton - Negligent Misrepresentation

Plaintiff claims that a special relationship exists between the parties and that Defendant provided materially incomplete information during the transaction. *See* SAC ¶¶ 76-77.

"To state a claim for negligent misrepresentation under New York law, a plaintiff must allege that (1) the parties stood in some special relationship imposing a duty of care on the defendant to render accurate information, (2) the defendant negligently provided incorrect information, and (3) the plaintiff reasonably relied upon the information given." *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 82 (S.D.N.Y. 2010). In determining whether a "special relationship" exists, courts consider "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y.

16

1996). But courts have routinely found that "[a] standard lender-borrower relationship is not the kind of special relationship that supports a claim of negligent misrepresentation." *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 608 (S.D.N.Y. 2013) (quoting *Boniel v. U.S. Bank N.A.*, 12-CV-3809 (ERK) (MDG), 2013 WL 458298, at *4 (E.D.N.Y. Feb. 6, 2013)); *Dobroshi v. Bank of Am., N.A.*, 65 A.D.3d 882, 884 (1st Dep't 2009) (collecting cases).

Here, Plaintiff has not alleged any facts to indicate that his relationship with Defendant goes beyond that of a standard lender and borrower. There is no allegation that Defendant held unique or special expertise unlike any other lender that gives adjustable-rate loans and/or requires confessions of judgment. *See* SAC ¶ 76. Nor are any facts alleged that would imply a relationship of trust and confidence existed. *See id.* The first element required to state a cause of action for negligent misrepresentation is therefore not met.

Plaintiff likewise fails to allege facts to satisfy the second element of negligent misrepresentation. Plaintiff alleges that Defendant supplied false information and omitted material facts by presenting the personal Confession of Judgment and adjustable-rate provisions at the eleventh-hour and by failing to identify the interest rate index and its payment impact. *See id.* ¶ 77. However, as discussed above, these allegations are not plausible given that the Commitment Letter signed by Plaintiff two months prior to closing included the applicable interest rate index and the personal Confession of Judgment requirement. *See* Commitment Letter ¶¶ 5, 15. The subsequent Loan Documents included the same interest rate index, and the terms of the Loan Documents imposed no duty on Defendant to explain the potential payment impact of that index. *See generally* Loan Documents. As Plaintiff does not assert that Defendant provided any incorrect information, he fails to satisfy the second element of negligent misrepresentation.

Accordingly, Plaintiff fails to plausibly allege negligent misrepresentation and that claim is dismissed.

### G. Seventh Cause of Action - Declaratory Judgment

Lastly, Plaintiff seeks declaratory relief regarding the validity, enforceability, and interpretation of the parties' commercial loan agreement. *See* SAC ¶¶ 83-95.

In determining whether to entertain declaratory judgment claims, district courts consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). The critical question is whether there is a substantial controversy between parties with adverse legal interests of sufficient immediacy and reality to warrant a declaratory judgment. *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023).

Plaintiff asks this Court to issue declaratory judgments regarding the loan's prime interest rate; the validity and enforceability of the Confession of Judgment; whether Defendant's conduct is subject to the obligation of good faith under Section 1-304; and whether Plaintiff prevails on his other causes of action. SAC ¶¶ 91-94. As all other claims are dismissed, there is no live controversy between the parties warranting declaratory judgment related to those claims. *See Admiral*, 57 F.4th 85 at 92. With respect to the interest rate, there is nothing unclear meriting clarification. *See* Note at 1. With respect to the enforceability of the Confession of Judgment, Plaintiff does not allege that the provision has been enforced thereby causing injury and adverse legal interests. Defendant even confirms that it has not filed the Confession of Judgment and is instead proceeding with a foreclosure on the mortgage. Mot. at 20. Thus, there is nothing of

18

sufficient immediacy and reality to warrant declaratory judgment on that matter. *See Admiral*, 57 F.4th 85 at 92.

Accordingly, Plaintiff's declaratory judgment claims are dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is granted. Plaintiff's action is hereby dismissed for failure to state a claim upon which relief may be granted. The Court recognizes that a *pro se* complaint should be read liberally and "should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991)). Not only has Plaintiff twice amended his complaint, but further amendment would be futile as the barriers to relief for Plaintiff's claims cannot be surmounted by reframing the complaint. *See Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013).

The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

_____/s/_____
ORELIA E. MERCHANT
United States District Judge

April 1, 2026
Brooklyn, New York

19